# Exhibit B

FILED
TARRANT COUNTY
9/20/2017 1:29 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. **096-294970-17**

| | | |
|---|---|---|
| KINDRED HOSPITALS LIMITED PARTNERSHIP d/b/a KINDRED HOSPITAL FORT WORTH (MANSFIELD CAMPUS) | § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § § | TARRANT COUNTY |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY | § § § § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND REQUEST FOR DISCLOSURE

Plaintiff Kindred Hospitals Limited Partnership d/b/a Kindred Hospital Fort Worth (Mansfield Campus) ("Kindred") states as follows for its petition against defendant Cigna Health and Life Insurance Company ("Cigna").

### DISCOVERY CONTROL PLAN

1. Pursuant to Texas Rule of Civil Procedure 190, Kindred intends to conduct discovery in accordance with Rule 190.4 (Level 3).

### NATURE OF THE ACTION

2. This action arises out of misrepresentations made to Kindred, and information withheld from it, regarding the availability of insurance coverage for a Cigna insured ("Insured"), who will not be identified herein for purposes of patient privacy.

3. Kindred is a long term acute care hospital ("LTAC"), which has an average length of stay in excess of 25 days, caring for the sickest of the sick and providing acute care and

treatment to patients who continue to require it after admissions at short term acute care hospitals that are not equipped to handle lengthy stays.

4. Kindred is a hospital accredited by the Joint Commission on the Accreditation of Health Organizations (JCAHO) under its hospital accreditation program, and is licensed as a hospital by the Texas Department of State Health Services.

5. Verifying coverage prior to admission is something Kindred does in the ordinary course of business. Kindred wants to make sure there is a viable payor source and the amount of payment that can reasonably be expected before admitting and treating any patient since it is not required to admit any patient.

6. Kindred verified coverage with Cigna prior to the Insured's admission. Cigna provided false information to Kindred at that time, and throughout the Insured's admission, which caused Kindred to expend countless hours of unnecessary administrative time and ultimately resulted in Kindred's sustaining substantial damages in excess of the jurisdictional limitation of this Court.

## THE PARTIES

7. Kindred is a Delaware limited partnership conducting business in Texas.

8. Cigna is a Connecticut corporation, authorized to do business in Texas, with its registered agent located in Dallas County, Texas. Cigna may be served through its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, Texas 75201.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over Cigna because services were rendered to the Insured at Kindred in Tarrant County, Texas. The amount in controversy is within jurisdictional limits of this Court.

2

10. Venue is proper in Tarrant County because a substantial portion of the events giving rise to this Petition occurred in Tarrant County.

## FACTUAL BACKGROUND

11. The Insured was a patient at Kindred from July 23, 2014 to November 25, 2014. Prior to the Insured's admission, Kindred contacted Cigna to verify the Insured's eligibility for coverage, speaking with Cigna employee Jerry. During this conversation, Jerry told Kindred that the Insured only had 60 days of LTAC coverage that was available. Kindred also received authorization for the admission from Cigna case manager Angela through authorization number B1Z1M2K1.

12. Kindred thereafter admitted the Insured and began providing him with care and treatment. Kindred forwarded clinical information to Cigna on an ongoing basis and received subsequent authorizations for continued admission on, among other dates, July 24, 2014, August 5, 2014, August 6, 2014, September 3, 2014, September 11, 2014, and September 18, 2014.

13. When Kindred spoke to case manager Angela on September 18, 2014, however, it was told that the Insured's Cigna coverage would exhaust on September 20, 2014, and, therefore, the admission would only be authorized for four additional days.

14. Given Cigna's pre-admission representations about the ostensibly limited coverage for LTAC care, the Insured had obtained secondary coverage through United Healthcare ("UHC") that became effective on August 1, 2014.

15. Thus, in reliance on Cigna's representations that the Insured's Cigna coverage had exhausted, Kindred stopped submitting clinical information to Cigna and began providing this information to UHC.

16. Kindred also forwarded claims for dates of service after September 20, 2014, to UHC. UHC, however, would not pay Kindred's claims because its records reflected that the Insured had primary coverage through Cigna and UHC had received nothing from Cigna indicating that its coverage had exhausted.

17. In that regard, Cigna's Explanations of Benefits ("EOBs") denying payment after September 20, 2014, asserted Kindred's alleged failure to "follow pre-authorization procedure" as the basis for non-payment. UHC would thus not pay for the dates of service after September 20, 2014, because it believed Cigna had denied Kindred's claims through some fault of Kindred.

18. Kindred spent months and countless hours of administrative time trying to get Cigna to generate an EOB that reflected what Cigna had told Kindred – namely, that Cigna's denial of claims after September 20, 2014, was based upon the alleged exhaustion of coverage.

19. What Kindred received instead was conflicting information from the numerous Cigna customer service representatives with whom it dealt.

20. For example, on July 15, 2015, Kindred was told by a supervisor at Cigna named Ketty that the Insured's coverage could not have exhausted because the Insured's policy had no benefit maximums. This information was invariably repeated until Kindred would advise the Cigna representatives what Cigna had told it before – at which point the Cigna representatives would change their tune.

21. Despite the information conveyed verbally, however, no one at Cigna would provide Kindred with an EOB stating that the Cigna coverage had exhausted.

22. In that regard, on September 21, 2015, Sarah M. told Kindred that the Insured had only 60 days of LTAC coverage per year, but that Cigna could not put "benefit exhausted" on an EOB.

23. As this made no sense, Kindred called Cigna again, this time speaking with Jill Y. Kindred once more asked for a "benefit exhaust" letter, which Jill Y. said she would fax to Kindred. The next day, Kindred received an alleged description of plan benefits for "Medical-Pulmonary Rehabilitation" from Cigna.

24. Since this fax also made no sense, Kindred called Cigna again on September 22 and 24, 2015. During the September 24 call, Kindred spoke with manager Charlotte H., who told Kindred there was no limit on LTAC care and treatment under the Insured's policy. Kindred explained the situation, as conveyed by other Cigna representatives, and Charlotte H. said she would research the issue and call Kindred back.

25. Other than a call on September 30 in which Charlotte H. said she was continuing to research the issue, Charlotte H. did not call Kindred back.

26. Kindred thus called Charlotte H. on October 12 and October 29. During the October 29 call, Charlotte H. told Kindred that Cigna was supposed to send it a letter stating that the Insured's policy had a 60-day limit per year for LTAC care and treatment and said she would see if the letter had been generated and fax it to Kindred.

27. Kindred did not receive the promised letter from Charlotte H. or anyone else at Cigna. Frustrated, Kindred again turned to UHC for payment, but as before, UHC refused to pay Kindred without proof that the Insured's Cigna coverage had exhausted.

28. Having no other recourse, Kindred retained counsel, who wrote a letter to Cigna on November 23, 2016, noting that Cigna could not state, on the one hand, that coverage was exhausted while refusing, on the other hand, to provide a written document asserting this as the basis for denial.

29. Despite the passage of several months, Cigna did not respond to this letter other than to state that it was being researched.

30. Finally, on April 28, 2017, in response to Kindred's specific request, Cigna provided a copy of the Insured's insurance policy to Kindred.

31. Upon reviewing this insurance policy, Kindred learned for the first time that Cigna's representations that the Insured had only 60 days of LTAC coverage were false. There was no limitation on LTAC coverage in the policy at issue – only an ostensible limitation on skilled nursing facilities, rehabilitation hospitals, and sub-acute facilities.

32. Kindred also learned that the fax of alleged benefits sent to Kindred on September 22, 2015, was false. Far from having anything to do with LTAC benefits, the benefits provided were actually those for "Outpatient Short-Term Rehabilitative Therapy."

33. Kindred further learned that the policy was fully funded, meaning that Cigna's money was at risk.

34. Clearly, Cigna provided false information to Kindred at the outset of the admission in an effort to save itself money, and then deliberately attempted to conceal its falsehoods from Kindred through the provision of misleading and inconsistent information and additional falsehoods, including a doctored document that Cigna falsely represented to be the LTAC benefits available under the policy at issue.

### COUNT I – FRAUDULENT MISREPRESENTATION

35. Kindred repeats and realleges the allegations contained in paragraphs 1 through 34, inclusive, and incorporates the same as though set forth in full.

36. Prior to the admission of the Insured, Kindred verified coverage with Cigna. Jerry of Cigna told Kindred that the Insured had only 60 days of LTAC coverage that was

available.  Cigna then repeated this statement, through case manager Angela, a couple of months later, as well as myriad additional times through various Cigna employees in the ensuing years.

37.     These representations were false, and Cigna knew that the representations were false or was recklessly indifferent to the representations' falsity when Cigna made them. Kindred is informed and believes, and on that basis alleges, that Cigna at all times knew its statements regarding ostensibly limited LTAC coverage were false.

38.     Kindred is informed and believes, and on that basis alleges, that Cigna made these misrepresentations in an attempt to convince Kindred that Cigna was not the proper payor after September 20, 2014, and with the intent that Kindred would rely upon the misrepresentations to its detriment.

39.     In reliance on Cigna's misrepresentations, Kindred admitted the Insured, provided him with care and treatment, and ultimately sought to obtain authorizations and payment from UHC, whose insurance the Insured had obtained when being advised of the ostensible limitation in the Cigna coverage.  Kindred's reliance was justifiable in light of Cigna's representations as to the ostensible limitations in the Insured's LTAC coverage.  Cigna had superior knowledge regarding the facts and circumstances of the Insured's coverage, and Kindred relied on Cigna to provide it with accurate information and disclose any facts that could potentially impact payment to Kindred.

40.     Kindred did not and could not have known of the falsity of Cigna's representations.  Had it known that LTAC coverage was in fact not limited to 60 days in the Insured's policy, among other things, Kindred would *not* have (a) ensured the Insured obtained secondary coverage; (b) wasted much time and energy submitting clinical information to UHC; (c) wasted much time and energy billing UHC; and (d) wasted much time and energy attempting

to obtain the written documentation from Cigna that UHC required in order to pay Kindred's claim. Moreover, Kindred would have continued to send authorization requests to Cigna.

41. In summary, Cigna made material, false representations to Kindred. When Cigna made the misrepresentations, Cigna (1) knew the representations were false, or (2) made the representations recklessly, as positive assertions, and without knowledge of their truth. Cigna made the misrepresentations with the intent that Kindred act on them and Kindred relied on the misrepresentations.

42. As a direct and proximate result of Cigna's misrepresentations and concealments, Kindred has suffered damages in an amount exceeding $650,000, insofar as, among other things, it provided care and services to the Insured for which it has not been compensated, was deprived of interest income on those amounts during the lengthy period of non-payment, and expended significant amounts of time and money dealing with both Cigna and UHC regarding payment.

43. Cigna has acted fraudulently and with malice and a conscious disregard of the rights of Kindred by making the foregoing misrepresentations and concealing other pertinent facts. Kindred is therefore entitled to recover exemplary and punitive damages from Cigna in an amount that is to be determined by the jury.

### COUNT II – NEGLIGENT MISREPRESENTATION

44. Kindred repeats and realleges the allegations contained in paragraphs 1 through 34, inclusive, and incorporates the same as though set forth in full.

45. Prior to the admission of the Insured, Kindred verified coverage with Cigna. Jerry of Cigna told Kindred that the Insured had only 60 days of LTAC coverage that was available. Cigna then repeated this statement, through case manager Angela, a couple of months later, as well as myriad additional times through various Cigna employees in the ensuing years.

46. Due to Cigna's failure to exercise reasonable care or competence in obtaining and communicating this information, these representations were false. Cigna supplied this false information in the course of its business for the guidance of Kindred in connection with its business.

47. In reliance on Cigna's misrepresentations, Kindred admitted the Insured, provided him with care and treatment, and ultimately sought to obtain authorizations and payment from UHC, whose insurance the Insured had obtained when being advised of the ostensible limitation in the Cigna coverage.

48. Kindred's reliance was justifiable in light of Cigna's representations as to the ostensible limitations in the Insured's LTAC coverage. Cigna had superior knowledge regarding the facts and circumstances of the Insured's coverage, and Kindred relied on Cigna to provide it with accurate information and disclose any facts that could potentially impact payment to Kindred.

49. In summary, Cigna made representations to Kindred in the course of Cigna's business in a transaction in which Cigna had an interest. Cigna supplied false information for the guidance of Kindred. Cigna did not exercise reasonable care or competence in obtaining or communicating the information, and Kindred justifiably relied on the representations.

50. As a direct and proximate result of Cigna's misrepresentations, Kindred has suffered damages in an amount exceeding $650,000, insofar as, among other things, it provided care and services to the Insured for which it has not been compensated, was deprived of interest income on those amounts during the lengthy period of non-payment, and expended significant amounts of time and money dealing with both Cigna and UHC regarding payment.

51. Cigna has acted grossly negligent and with malice and a conscious disregard of the rights of Kindred by making the foregoing misrepresentations and concealing other pertinent facts. Kindred is therefore entitled to recover exemplary and punitive damages from Cigna in an amount that is to be determined by the jury.

### COUNT III – VIOLATIONS OF TEXAS INSURANCE CODE

52. Kindred repeats and realleges the allegations contained in paragraphs 1 through 34, inclusive, and incorporates the same as though set forth in full.

53. As detailed above, Cigna has engaged in unfair and deceptive conduct with respect to Kindred which is prohibited by Texas Insurance Code § 541.061, and which gives rise to a private cause of action under Texas Insurance Code § 541.151.

54. Specifically, and among other things, Cigna advised Kindred that LTAC coverage was limited to 60 days, which was not true, and continuously provided Kindred with erroneous information in an effort to conceal the true facts from Kindred. Due to Cigna's actions, Kindred was forced to expend countless employee hours trying to obtain payment from UHC, even though Cigna should have paid for the care and treatment at issue.

55. Cigna committed these unfair and deceptive acts for the purpose of benefitting itself at the expense of Kindred, insofar as Kindred was deprived of payment to which it was entitled for care and treatment of the Insured and was forced to expend much time and money to address Cigna's misrepresentations.

56. As a direct and proximate result of Cigna's unfair and deceptive conduct, Kindred has suffered damages in an amount exceeding $650,000, insofar as, among other things, it provided care and services to the Insured for which it has not been compensated, was deprived of

interest income on those amounts during the periods of non-payment, and expended significant amounts of time and money dealing with both Cigna and UHC regarding payment.

57. Pursuant to Texas Insurance Code § 541.152, Kindred is also entitled to recover its reasonable and necessary attorneys' fees and court costs in connection with this action, along with treble damages, insofar as Cigna knowingly committed the acts of which Kindred complains.

### STATEMENT REQUIRED BY TEXAS RULE OF CIVIL PROCEDURE 47(c)

58. Kindred seeks monetary relief over $1,000,000, including damages, penalties, costs, expenses, interest, and attorney fees.

### REQUEST FOR DISCLOSURE

59. Pursuant to Texas Rule of Civil Procedure 194, Cigna is requested to disclose, within fifty (50) days of service of this request to the undersigned attorney at Fultz Maddox Dickens PLC, 101 S. Fifth Street, Suite 2700, Louisville, Kentucky 40202, the information or material described in Texas Rule of Civil Procedure 194.2(a)-(l).

### PRAYER FOR RELIEF

WHEREFORE, Kindred requests judgment against Cigna as follows:

A. For an award of damages in an amount to be proved at trial;

B. For an award of exemplary damages in an amount to be proved at trial;

C. For pre-judgment and post-judgment interest at the maximum rate permitted by law;

D. For treble damages pursuant to the Texas Insurance Code;

E. For Kindred's costs, expenses, and attorneys' fees associated with prosecution of this action;

F.  For trial by jury; and

G.  For all other relief to which Kindred may be entitled.

Respectfully submitted,

*/s/ Gregory M. Sudbury*
Leigh V. Graves, SBN 24051467
FULTZ MADDOX DICKENS PLC
101 S. Fifth Street, Suite 2700
Louisville, Kentucky 40202
Telephone: (502) 588-2000
Facsimile:  (502) 588-2020
lvgraves@fmdlegal.com

Gregory M. Sudbury (SBN 24033367)
QUILLING, SELANDER, LOWNDS, WINSLETT &
MOSER, P.C.
2001 Bryan Street, Ste. 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
gsudbury@qslwm.com

*Counsel for Plaintiff*

# CIVIL CASE INFORMATION SHEET

**CAUSE NUMBER** *(FOR CLERK USE ONLY)*: _____   **COURT** *(FOR CLERK USE ONLY)*: _____

**STYLED** Kindred Hospitals Limited Partnership d/b/a Kindred Hospital Fort Worth (Mansfield Campus) v. Cigna Health and Life Insurance Comp
(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|---|
| Name:<br>Gregory M. Sudbury | Email:<br>gsudbury@qslwm.com | Plaintiff(s)/Petitioner(s):<br>Kindred Hospitals Limited Partne | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other: _____ |
| Address:<br>2001 Bryan Street, Suite 180 | Telephone:<br>214-871-2100 | | Additional Parties in Child Support Case: |
| City/State/Zip:<br>Dallas, TX 75201 | Fax:<br>214-871-2111 | Defendant(s)/Respondent(s):<br>Cigna Health and Life Insurance Company | Custodial Parent:<br><br>Non-Custodial Parent: |
| Signature:<br>*/s/* | State Bar No:<br>24033367 | [Attach additional page as necessary to list all parties] | Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case *(select only 1)*:**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☒ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional<br>   Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability<br>   List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/<br>   Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order |
| | | **Related to Criminal Matters** | **Other Family Law** | **Parent-Child Relationship** |
| | | ☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus—<br>   Pre-indictment<br>☐ Other: _____ | ☐ Enforce Foreign<br>   Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities<br>   of Minority<br>☐ Other: | ☐ Adoption/Adoption with<br>   Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental<br>   Rights<br>☐ Other Parent-Child: |
| **Employment** | **Other Civil** | | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | ☐ Administrative Appeal<br>☐ Antitrust/Unfair<br>   Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: _____ | | |
| **Tax** | *Probate & Mental Health* | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: _____ | | |

**3. Indicate procedure or remedy, if applicable *(may select more than 1)*:**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought *(do not select if it is a family law case)*:**
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☐ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

Rev 2/13