U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 16 2018

CLERK, U.S. DISTRICT COURT
By_____
         Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

KINDRED HOSPITALS LIMITED         §
PARTNERSHIP D/B/A KINDRED         §
HOSPITAL FORT WORTH (MANSFIELD    §
CAMPUS)                           §
                                  §
          Plaintiff,              §
                                  §
VS.                               §   NO. 4:17-CV-866-A
                                  §
CIGNA HEALTH AND LIFE             §
INSURANCE COMPANY,                §
                                  §
          Defendant.              §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration and decision is the motion of defendant, Cigna Health and Life Insurance Company ("Cigna"), titled "Defendant's Motion to Dismiss and Compel Arbitration." Having considered the motion, the response thereto of plaintiff, Kindred Hospitals Limited Partnership d/b/a Kindred Hospital Fort Worth (Mansfield Campus) ("Kindred"), Cigna's reply, and the applicable legal authorities, the court has concluded that such motion should be granted in part and denied in part.

I.

## Plaintiff's Claims

Kindred's live pleading is "Plaintiff's Amended Complaint and Jury Demand." In it, plaintiff alleged:

Kindred is a long term acute care hospital providing acute hospital care and treatment to patients who continue to require such care after admission at short term acute care hospitals not equipped to handle lengthy stays. Because of the expense of treating many of its patients, Kindred engages in a pre-admission verification process to determine if a potential patient has insurance coverage and the nature and extent of such coverage. When the insured ("Insured"), a party who is not named in this action in an effort to protect his privacy, sought admission at Kindred, Kindred contacted Cigna to verify the Insured's eligibility for coverage. A representative of Cigna told Kindred that Insured had only sixty days of long term acute care coverage available.

Kindred thereafter admitted the Insured and began providing him with care and treatment. Kindred forwarded clinical information to Cigna on an ongoing basis and received subsequent authorizations of continued admission through September 18, 2014, when a representative of Cigna informed Kindred that the coverage Insured had through Cigna would exhaust on September 20, 2014,

2

and that admission would only be authorized for four additional days.

Due to Cigna's pre-admission representations that Insured had only limited coverage for long term acute care, the Insured had obtained secondary coverage through another provider that became effective on August 1, 2014. In reliance on Cigna's September 18, 2014 representations that the Cigna coverage had exhausted, Kindred stopped submitting clinical information to Cigna and instead began submitting Insured's clinical information and claims for dates of service to Insured's secondary coverage provider. The secondary coverage provider however refused to pay the claims because it had received no indication from Cigna that the Cigna coverage was exhausted. Instead, Cigna's Explanation of Benefits denying payment after September 20, 2014, cited Kindred's failure to follow pre-authorization procedure as the basis for nonpayment. Thus, the secondary coverage provider would not pay for the post-September 20, 2014 dates of service because it believed Cigna had denied Kindred's claims due to some fault of Kindred.

As a result, Kindred alleged it spent months and countless hours of administrative time trying to get Cigna to generate an Explanation of Benefits reflecting that Cigna's denial of claims was based upon exhaustion of benefits. Instead, Kindred received

conflicting information from the customer service representatives it dealt with, including both that (1) the coverage could not have exhausted because the Insured's policy had no benefit maximum, and (2) Insured had only sixty days of long term acute care coverage per year but that nonetheless Cigna could not put "benefit exhausted" on an Explanation of Benefits denying coverage. Kindred continued to seek out documentation from Cigna through the end of October 2015, but Cigna was never able to provide the desired information to Kindred.

On November 23, 2016, Kindred sent a demand letter to Cigna demanding payment for all of Insured's dates of service after September 20, 2014. Cigna did not respond to Kindred's letter, other than to inform Kindred that it was looking into the matter. Finally, on April 28, 2017, Cigna provided Kindred with a copy of the Insured's insurance policy. Upon reviewing the policy, Kindred learned that Cigna's representations about the sixty-day limitation on Insured's coverage for long term acute care treatment did not exist. Based on these facts, Kindred brought as Counts I, II, and III of its complaint against Cigna for (1) fraudulent misrepresentation, (2) negligent misrepresentation, and (3) violations of the Texas Insurance Code. Kindred also sought as Count IV a judicial declaration of the rights and duties of the parties in relation to the claims in this action,

including that Cigna is precluded by the Patient Protection and Affordable Care Act from applying a limitation to the Insured's hospital coverage and that any provision in the policy providing such is illegal, and that Kindred is entitled to eighteen percent interest on the amounts due and owing to it for its care and treatment of Insured. Finally, as it's Count V of its amended complaint, Kindred has brought a claim under 29 U.S.C. § 1332 for ERISA benefits it claims are owed to it as an assignee of benefits conferred by a valid assignment of Insured's rights and benefits owed under its ERISA-governed benefit plan.

II.

## Defendant's Motion to Dismiss and Compel Arbitration and Plaintiff's Response

A. Grounds of Defendant's Motion

Cigna brings this motion under Rule 12(b)(3) urging the court that the claims against it by plaintiff challenge the actions, adjudication, and payment of claims governed by the parties' Hospital Services Agreement (the "HSA" or "agreement"), and are thus subject to a binding arbitration agreement, with the result that this court is not the proper forum for the parties' dispute.

B.  Plaintiff's Response to the Motion to Dismiss and Compel Arbitration

Kindred disagrees with Cigna's assertion that the claims and causes of action plaintiff has asserted against Cigna fall within the scope of the arbitration clause found in section 6.2 of the parties' agreement. In support of this position, Kindred argues that all of Kindred's claims "stand alone, are completely independent of the HSA, and can be maintained without reference to the HSA," doc.[1] 18 at 7, with the result that the claims are not subject to the arbitration provision.

III.

Applicable Legal Principles

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA further allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" to petition the court for an order directing the parties to proceed to arbitration as provided in their agreement. Id. at § 4.

In determining whether compelling arbitration is proper, the FAA requires courts to conduct a two-step inquiry. JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir.

---

[1] The "Doc.___" reference is to the number assigned to the referenced item on the docket in this action, No. 4:17-CV-866-A.

6

2007). At step one, the court must determine whether the parties agreed to arbitrate the dispute in question by considering (1) whether a valid agreement to arbitrate exists between the parties, and (2) whether the dispute between the parties falls within the scope of that arbitration agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Webb v. Investacorp, Inc., 89 F.3d 252, 258 (5th Cir. 1996). If the court determines that the parties agreed to arbitrate, the second step requires the court to assess "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Mitsubishi Motors Corp., 473 U.S. at 628.

In light of the strong federal policy favoring arbitration, courts are to resolve any doubt or uncertainty about whether a dispute is covered by an agreement to arbitrate in favor of arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Neal v. Hardee's Food Sys., Inc., 918 F.2d 34, 37 (5th Cir. 1990). "Unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue," arbitration should not be denied. Safer v. Nelson Fin. Grp., Inc., 422 F.3d 289, 294 (5th Cir. 2005)(quoting Neal, 918 F.2d at 37).

IV.

Analysis

The parties do not dispute that there is a valid arbitration clause, but instead dispute whether plaintiff's claims against defendant fall within the scope of such provision. The portion of the parties' agreement, titled "6.2 Dispute Resolution," that contains the arbitration clause at issue reads:

6.2 <u>Dispute Resolution</u>

    6.2.1    <u>CIGNA'S Internal Dispute Resolution Process. Disputes between the parties arising with respect to the performance or interpretation of the Agreement</u> shall first be resolved in accordance with the applicable internal dispute resolution process outlined in the Administrative Guidelines. . . . If the matter is not resolved within 60 days of a party's written request for negotiation, <u>either party may initiate arbitration</u> by providing written notice to the other party. With respect to a payment or termination dispute, [Kindred] must submit a request for arbitration within 12 months of the date of the letter communicating the final decision under CIGNA'S internal dispute resolution process unless applicable law specifically requires a longer time period to request arbitration. If [Kindred] fails to request arbitration within such 12 month period, CIGNA's final decision regarding the dispute under its internal dispute resolution process will be binding on [Kindred], and [Kindred] shall not bill CIGNA, Payor or the Participant for any payment

8

>                   denied because of the failure to timely
>                   submit a request for arbitration.
>
>     6.2.2         <u>Arbitration</u>. If a party initiates
>                   arbitration as provided above, the
>                   proceeding shall be held in the
>                   jurisdiction of [Kindred's] domicile.
>                   The parties will jointly appoint a
>                   mutually acceptable arbitrator. If the
>                   parties are unable to agree upon such an
>                   arbitrator within 30 days after the
>                   party has given the other party written
>                   notice of its desire to submit a dispute
>                   for arbitration, then the parties shall
>                   prepare a Request for a Dispute
>                   Resolution List and submit it to the
>                   American Health Lawyers Association
>                   Alternative Dispute Resolution Service
>                   ("AHLSA ADR Service") along with the
>                   appropriate administrative fee. . . .
>                   <u>Arbitration shall be the exclusive
>                   remedy for the resolution of disputes
>                   arising under this Agreement</u>.

Doc. 17 at 16, ¶ 6.2 (emphasis added)(errors in original). The Third Circuit has already had the opportunity to evaluate and determine the scope of an almost identical arbitration clause in <u>CardioNet, Inc. V. Cigna Health Corp.</u>, 751 F.3d 165, 173-74 (3rd Cir. 2014). Though the wording used between the parties in <u>CardioNet</u> varied in a few ways from the language used in the agreement at issue in the present case, the pertinent parts, quoted above and identified above by emphasized text, were almost identical.[2] <u>Id.</u> at 173. The arbitration provision in that case

---

[2]One noteworthy distinction is the use of "[d]isputes between the parties arising with respect to
(continued...)

was also found within a larger dispute resolution section, which simplified the entire dispute resolution process into a two-step procedure. Id. In analyzing the scope of those provisions, the Third Circuit said:

> The above-quoted language makes clear that only those disputes "regarding performance or interpretation of the Agreement" must be arbitrated. True, the phrase "regarding the performance or interpretation of the Agreement" appears in the internal dispute resolution paragraph (Section 6.3), rather than the mandatory arbitration paragraph (Section 6.4). But it is clear from the language of the two sections that the parties intended them to be read together, as two stages of mandatory dispute resolution. Section 6.3 explains that where a dispute subject to that provision cannot be resolved using the internal dispute resolution process, "either party may initiate arbitration." Section 6.4 then outlines what form such an arbitration will take. The first sentence of Section 6.4 requires arbitration not of "all" or "any" disputes between the parties, but of only "the dispute" that the parties failed to resolve through the internal process outlined in Section 6.3. Hence, Section 6.4 mandates the arbitration of only those disputes subject to the internal dispute resolution process outlined in Section 6.3. And Section 6.3 only applies to those "disputes that might arise between the parties concerning the performance and interpretation of the Agreement." Accordingly, Section 6.4 must be limited to disputes concerning the Agreement's "performance or interpretation."

Id. at 173-74. Having carefully studied the dispute resolution portion of the agreement between Kindred and Cigna, the court has

---

²(...continued)
the performance or interpretation of the Agreement" in the present agreement, doc. 17 at 16, ¶ 16, as compared to "[d]isputes that might arise between the parties regarding the performance or interpretation of the Agreement" in the dispute resolution provision discussed in CardioNet, Inc.

determined to interpret such portion of the agreement as the Third Circuit interpreted the dispute resolution section at issue in the CardioNet decision. Accordingly, the court finds that the arbitration provision found in the parties' agreement applies to and embraces all disputes arising with respect to the performance or interpretation of the agreement.

Having defined the scope of the arbitration provision, the question becomes whether Kindred's claims against Cigna fall within that scope. As explained above, Cigna urges in its motion that Counts I through V of plaintiff's complaint all fall within the scope of the arbitration clause, because "Kindred is directly challenging Cigna's actions, adjudication, and payment of claims governed by the parties' HSA." Doc. 16 at 3. Cigna asserts that these claims by Kindred invoke portions of two sections of the parties' agreement:

> SECTION 3 - DUTIES OF CIGNA AND PAYORS
>
> . . . .
>
> 3.2 Benefit Information. [Kindred] will be provided with access to benefit information concerning the type, scope and duration of benefits to which a Participant is entitled as specified in the Administrative Guidelines.
>
> . . . .

SECTION 4 - COMPENSATION

4.1 <u>Payments</u>. [Kindred] will be paid for Covered
Services rendered to Participants in accordance
with the fee schedule and reimbursement terms set
forth in Exhibit A to this agreement . . . .
Amounts due and owing under this Agreement with
respect to complete claims for Covered Services
will be payable within the timeframes required by
applicable law. If such amounts are not paid
within the timeframes required by applicable law,
then late payment penalties will be paid to the
extent required under applicable state prompt
payment of claims laws. No other late payment
penalties shall apply.

Doc. 17 at 9-10, ¶¶ 3.2 & 4.1 (errors in original). Kindred urges the court that because its claims "are independent of the HSA [they] do not fall within the scope of its arbitration clause." Doc. 18 at 5.

When determining whether particular claims fall within the scope of a valid arbitration provision, "[the] inquiry is not guided by the legal labels attached to [plaintiff's] claims; rather, it is guided by the factual allegations underlying those claims." <u>Harvey v. Joyce</u>, 199 F.3d 790, 795 (5th Cir. 2000) (citing <u>Mitsubishi Motors</u>, 473 U.S. at 662 n.9). Having studied Kindred's amended complaint, the court has determined that Counts I, II, III, and IV all fall within the scope of the arbitration provision.

A.  Counts I, II, III, and IV

Kindred's Counts I, II, and III, supra at 4-5, are premised on Cigna's alleged failure to provide accurate and complete benefit information as it related to Insured's policy.  Kindred argues in its response to the motion at issue here that the two misrepresentation claims do not fall within the scope of the arbitration provision because (1) the facts supporting these claims do not depend "in any way on the existence of a contractual relationship between the parties or otherwise require[] reference to the HSA," (2) that "[e]ven if [Kindred] had no underlying contract with Cigna, it still would have contacted Cigna to verify the Insured's coverage and obtain pre-authorization treatment," and (3) "even in the absence of an underlying contract, [Kindred] would have relied on the information it received from Cigna by seeking payment from the secondary insurer after the date of the Insured's Cigna coverage purportedly exhausted."  Doc. 18 at 9-10.  Kindred further argues that the alleged violations of the Texas Insurance Code are beyond the scope of the parties' arbitration provision because "not one of the required elements or supporting facts depends in any way on a contract between the parties or requires reference to the HSA."  Id. at 10.  Plaintiff's contentions ignore that the

13

parties did enter into an agreement spelling out the duty of Cigna to provide Kindred "with access to benefit information covering the type, scope and duration of benefits to which a Participant is entitled." Doc. 17 at 9, ¶ 3.2. And they ignore the fact that the agreement dictates that disputes arising with respect to the performance of such agreement shall be submitted to arbitration. In reaching a decision on the outcome of Counts I, II, and III, the fact finder would necessarily have to determine whether Cigna acted or failed to act in a way that conformed with the duties imposed on it by the agreement. Thus, the court finds that the resolution of such claims are properly within the scope of the arbitration clause.

Kindred's Count IV claim seeking "a judicial declaration of the rights and duties of the parties," particularly that (1) "Cigna is precluded by [the Patient Protection and Affordable Care Act] from applying any day limitation to the Insured's hospital coverage . . . ;" and (2) "Kindred is entitled to 18 percent interest on the amounts due and owing to it for its care and treatment of the Insured," is likewise within the scope of the arbitration provision. Doc. 13 at 13, ¶ 65. By asserting that Cigna has delayed payment to Kindred and failed to compensate Kindred "for damages [Kindred] has suffered because of

the amount of time it has spent trying to obtain payment from Cigna . . . for its care and treatment of Insured[,]" doc. 13 at 13, ¶ 63, Kindred is necessarily asking the court to determine that Cigna has violated the duty imposed on it by section 4.1 of the parties' agreement. Thus, the court finds that such claim is within the scope of the parties' arbitration provision.

B. Count V

Kindred's Count V claim is brought under Section 502(a) of ERISA to recover benefits due to it under Insured's ERISA-governed welfare benefit plan, and "to otherwise enforce its rights under the [p]lan." Doc. 13 at 14. Kindred brings such claim derivatively, as an assignee of Insured's status as a participant or beneficiary to the plan. See Dallas Cty. Hosp. v. Assocs. Health & Welf., 293 F.3d 282, 285 (5th Cir. 2002). Accordingly, as Kindred argues such assignment puts Kindred in the shoes of Insured, with the result that Kindred's ERISA claim is only arbitrable if the arbitration clause would be binding on Insured. See Southwestern Bell Tel. Co. v. Mktg. on Hold Inc., 308 S.W.3d 909 (Tex. 2010).

As explained above, a party seeking to compel arbitration must establish that a valid arbitration agreement exists, and that the dispute at issue falls within such provision.

15

Mitsubishi Motors Corp, 473 U.S. at 626, 268; Webb, 89 F.3d at 258. To determine whether the parties agreed to arbitrate the dispute in question, ordinary state-law contract principles are to be applied. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Under Texas Law, for a valid contract to be formed there must be an offer, acceptance, mutual assent, execution, and delivery of the contract with the intent that it be mutual and binding, and consideration. Rice v. Metro. Life Ins. Co., 324 S.W.3d 660, 666 (Tex. App.-Fort Worth 2010, no pet.). In the absence of these elements, an arbitration clause is general unenforceable. In re Rubiola, 334 S.W.3d 220, 224 (Tex. 2011) (explaining that an arbitration agreement is generally enforceable only as to the parties to it.). Although an arbitration agreement may apply to a non-signatory in rare instances, the ultimate question of who will be bound is determined by looking at the intent of the parties as expressed by the terms of the agreement. Id. at 224-25. Specifically, Texas law holds the following theories to be sufficient to support compelling a non-signatory to submit to arbitration: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. See In re Kellogg, Brown & Root, 166 S.W.3d 732, 739 (Tex. 2005).

Cigna has cited to no authority to suggest that Insured would be bound by the terms of the HSA entered into between Kindred and Cigna. Instead, Cigna argues that because Kindred has derivatively brought its claim under ERISA for the purpose of obtaining reimbursement or payment from Cigna for care provided by Kindred to Insured, Kindred has invoked section 4.1 of the parties agreement. But the court has already defined that the arbitration clause applied to "disputes between the parties," supra at 11. To compel arbitration of this claim, Cigna must demonstrate that even as a non-signatory, Insured, rather than Kindred, would be required to arbitrate the ERISA claim brought by Kindred. Essentially, Kindred has stepped into the shoes of Insured in its pursuit of the ERISA claim, and therefore, without evidence that Insured intended to be bound by the arbitration clause, Kindred cannot be compelled to arbitrate such claim.

C. Conclusion

For the reasons stated above, the court finds that Cigna's motion should be granted as to Counts I, II, III, and IV of Kindred's amended complaint because such claims are are subject to the arbitration agreement contained in the HSA. The court also determines that Cigna's motion should be denied as to Count V. The court is not ruling on plaintiff's alternative request

for a stay of Count V at this time on the assumption that each party will make an appropriate filing of any request the party has based on the court's rulings made below.

V.

ORDER

Therefore,

The court ORDERS that Counts I, II, III, and IV of Kindred's amended complaint be, and are hereby, dismissed as arbitrable.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to such dismissals.

The court further ORDERS that Cigna's motion be, and is hereby, denied as to the claim asserted by Kindred in Count V of its first amended complaint.

The court further ORDERS that by 4:00 p.m. on March 30, 2018, Kindred file a second amended complaint in which it limits its allegations to those alleging the claim against Cigna that it

has asserted in Count V of its first amended complaint, and that Cigna file an answer to such second amended complaint by 4:00 p.m. on April 16, 2018.

SIGNED March 16, 2018.

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　JOHN McBRYDE
　　　　　　　　　　　　　　　United States District Judge